**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 15-169-SDD-RLB |
| JIMMY R. DAVIS, a.k.a. "BoomBoomPow" | |

**RULING**

This matter is before the Court on the Defendant's *Motion to Vacate Under 28 U.S.C. § 2255*.[1] The Government has filed an *Opposition*[2] to this motion and a *Supplemental Memorandum*,[3] upon receiving the sentencing transcript. Defendant filed a *Reply*.[4] For the reasons which follow, the motion shall be denied.

**I.  BACKGROUND FACTS**

On December 2, 2015, Defendant was charged by *Indictment*[5] with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of transferring obscene matter to a minor, in violation of 18 U.S.C. § 1470. The *Indictment* charged that Defendant had exchanged approximately 100 images of child pornography with a 15-year old minor via a cellphone application, "TextNow," under the alias "BoomBoomPow."[6]

---

[1] Rec. Doc. No. 42-2.
[2] Rec. Doc. No. 51.
[3] Rec. Doc. No. 59.
[4] Rec. Doc. No. 64.
[5] Rec. Doc. No. 1.
[6] Rec. Doc. No. 27.

1

Document Number: 61362

On July 12, 2016, Defendant made his initial appearance, where he was informed of the charges in the *Indictment* and the maximum possible penalties.[7] At this time, Defendant pled not guilty and stipulated to detention pending trial.[8] However, on September 14, 2016, Defendant pled guilty to both counts in the indictment.[9] Under the terms of the plea agreement, Defendant agreed to waive his right to appeal, or challenge any post-conviction proceedings, other than: (1) a claim of ineffectiveness of counsel; (2) a sentence in excess of statutory maximum; (3) a sentence which is an upward departure pursuant to the Sentencing Guidelines; and (4) any non-Guidelines sentence or variance which is above the guidelines range calculated by the Court.[10] Defendant stated, under oath, that he fully understood the agreement, as well as the nature and elements of the charges, and that the plea was knowingly and voluntarily given.[11] The Court accepted the guilty plea, but postponed acceptance[12] of the plea agreement until after a review of the presentence investigation report (PSR).[13] The PSR was filed into the record on February 7, 2017, and a sentence hearing was set for April 6, 2017.[14]

The PSR detailed that defendant possessed an extensive amount of child pornography, 1,330 images and 22 videos.[15] The Probation Department applied the United States Sentencing Guidelines (USSG) in its calculation of the offense level for Count One, determining that, when looking at the totality of the circumstances, along with

---

[7] Rec. Doc. No. 51.
[8] *Id.*
[9] *Id.*
[10] Rec. Doc. 27.
[11] Rec. Doc. 52.
[12] *Id.*
[13] *Id.*
[14] Rec. Doc. 51.
[15] Rec. Doc. 29.

Defendant's acceptance of responsibility, the Defendant's total offense level was 43.[16] His criminal history category was determined to be category IV, as a result of committing the aforementioned crimes while on probation and prior convictions of simple burglary and possession of marijuana.[17]

On May 25, 2017, the Defendant was sentenced to 240 months on Count One and 120 months on Count Two, which were to be served consecutively, for a total of 360 months, which is within the USSG range.[18] Judgment was entered on June 15, 2017, and Defendant did not file a direct appeal within 14 days, thereby making the judgment final on June 29, 2017.[19] The Defendant's sentence also included 20 years of supervised release and $9,000 in restitution to the victims.[20]

The Defendant untimely filed the motion at issue on August 7, 2018, alleging ineffectiveness of counsel for the following reasons: (1) failure to advise Defendant of the option of entering an open plea to the *Indictment*; (2) failure to present expert testimony at sentencing, as a mitigating factor, due to the effects caused by his addiction to synthetic marijuana and Defendant's diminished mental capacity; and (3) failure to consult with or advise Defendant regarding the filing of a notice of appeal.[21] Defendant admits that his motion is untimely, but argues he is entitled to equitable tolling as a result of his ignorance of the law coupled with his mental state, limited access to legal materials, and being confined in prison with multiple transfers between institutions.[22] The Government filed an

---

[16] *Id.*
[17] *Id.*
[18] Rec. Doc. No. 39.
[19] *Id.*
[20] *Id.*
[21] Rec. Doc. 42-2.
[22] *Id.*

*Opposition*[23] to this motion on June 10, 2019, along with a *Supplemental Memorandum* on July 8, 2019.[24]

## II. Equitable Tolling

A motion made under 28 U.S.C. § 2255 is subject to a one-year statute of limitations and " shall run from . . . the date on which the judgment of conviction becomes final."[25] In this case, the judgment became final on June 29, 2017, 14 days after it was entered by the Court which was the period provided for the Defendant to seek review of the final conviction.[26] *Pro se* prisoners are subject to the mailbox rule, which determines that a filing is deemed filed as soon as it has been deposited into the prison mail system.[27] Defendant did not mail this motion until July 30, 2018, a month and one day after the lapse of the statute of limitations.[28]

The Fifth Circuit has maintained that, since the one-year statute of limitations of 28 U.S.C. § 2255 is not jurisdictional, it is subject to equitable tolling.[29] However, equitable tolling should only be granted in "rare and exceptional circumstances."[30] "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

---

[23] Rec. Doc. 51.
[24] Rec. Doc. 59.
[25] 28 U.S.C. § 2255(f)(1); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).
[26] Rec. Doc. 39.
[27] *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266 (1988) and *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995)).
[28] Rec. Doc. 42; Rec. Doc. 42-5.
[29] *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).
[30] *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

4

Document Number: 61362

timely filing."[31] Prevention in this case requires a causal relationship between the extraordinary circumstances and the failure to timely file.[32]

Defendant maintains that he is entitled to equitable tolling for the following reasons: (1) Defendant was transferred between federal correctional facilities three times, remaining always in the special housing unit (SHU) due to the nature of his offenses, and was not able to transfer with him all of his paperwork; (2) Defendant was told that he was on a waiting list when requesting access to his counsel's address, Clerk of Court's address, and the electronic law library while he was transferring between correctional facilities; (3) the Defendant's learning disability and diminished mental capacity; (4) Defendant's counsel not responding to his letters requesting assistance on April 2, 2018, May 8, 2018, and May 31, 2018; and (5) the Mailroom and Special Investigative Services interception of legal mail due to a requested disk allegedly containing child pornography.[33]

**A. Reasonable Diligence**

The Defendant's alleged timeline is as follows. First, Defendant initially was housed in the West Baton Rouge Jail for approximately five or six weeks.[34] Second, Defendant was transferred to Forrest City, Arkansas, SHU for approximately three months, beginning on or around August 14, 2017.[35] Third, Defendant was transferred to Three Rivers, Texas, SHU for approximately 54 days, beginning on or around December 19, 2017.[36] Finally, Defendant was transferred to Edgefield, South Carolina, beginning on

---

[31] *United States v. Perkins*, 481 App'x 114, 117 (5th Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted)).
[32] *Id.* at 118.
[33] Rec. Doc. 42-2.
[34] Rec. Doc. 42-1.
[35] *Id.*
[36] *Id.*

5

Document Number: 61362

or around March 7, 2018. Defendant also states that, somewhere in the period between June 29, 2017, and March 7, 2018, he was housed in Oklahoma City, Oklahoma, for approximately three weeks to a month.[37]

The Defendant alleges that these transfers between correctional institutions prevented him from timely filing his motion.[38] Accepting these representations as true – that he had absolutely no access to legal materials for 251 days between June 29, 2017, and March 7, 2018 - Defendant still had 114 days remaining within the statute of limitations.[39] The only requests for information made by the Defendant were to his former attorney and to the State Bar Association solely for the reason of lodging a complaint with about former counsel.[40] Defendant never contacted the Court for any information necessary to the filing of his motion.[41] Further, Defendant did not send his first letter to previous counsel until almost a month into his confinement in Edgefield, South Carolina on April 2, 2018.[42]

Defendant relies on the decision in *United States v. Carlsen*,[43] a nonbinding Ninth Circuit decision, to support his contention that he acted with reasonable diligence. However, Defendant ignores the pertinent facts that the defendant in *Carlsen* not only attempted to contact his former attorney numerous times, both by mail and phone, but also contacted the district court and the state's respective bar association.[44] The only actions taken by the present Defendant were three letters sent by the Defendant to his

---

[37] *Id.*
[38] Rec. Doc. 42-2.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *United States v. Carlsen*, 441 Fed. Appx. 531 (9th Cir. 2011).
[44] Rec. Doc. 42-2.

former attorney and a complaint lodged against same with the Louisiana State Bar Association, which were not sent until 10 months into his 12-month statute of limitations period.[45]

Defendant claimed that, during the period between June 29, 2017, and March 7, 2018, while he was being transferred between correctional facilities, he was denied access to legal materials.[46] However, Defendant provides no specific factual assertions in which he diligently requested access to legal materials during his period of transference. To prove that a defendant acted with diligence, he must make specific factual allegations.[47] Defendant makes only vague allegations that he was denied the right to do so because he was on a waiting list to use the legal materials.[48] This representation is undermined by the fact that his first recorded request for information - a letter to his attorney - was mailed only two months before the expiration of the statute of limitations period.[49] His representation is further undermined by the fact that this letter was mailed one month into his final transfer to Edgefield, South Carolina, where he had already met a purportedly competent writ writer.[50] The Court finds that the timing of the requests actually made demonstrates a lack of reasonable diligence on the part of the

---

[45] *Id.*
[46] *Id.*
[47] *See, e.g., Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (petitioner's "conclusory statement that he 'diligently pursued his rights and remedies' will not suffice"); *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008) ("inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence"); *Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir. 2006), *opinion modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006) (per curiam) (to show diligence, petitioner must provide details of specific actions take toward filing the petition).
[48] Rec. Doc. 42-2.
[49] *Id.*
[50] *Id.*

7

Defendant and renders suspect his unsubstantiated claims that he sought access to legal materials throughout the period that he was transferred between prisons.

Defendant also claims that the Court must account for his learning disability and diminished mental capacity in determining whether he acted with reasonable diligence.[51] However, Defendant fails to allege how this infirmity impacted his ability to timely file his motion. Defendant rests this allegation upon his previous allegations that he was prevented from doing so by being transferred between correctional institutions and that he attempted repeatedly to contact his attorney,[52] which the Court has already addressed. Further, in a case where the district court for the Northern District of Texas held that a defendant's ability to only read at a third or fourth grade reading level was insufficient to trigger equitable tolling,[53] the court noted that: "although the Fifth Circuit has recognized the possibility that mental incompetency might support equitable tolling of a limitations period, such mental illness must render the petitioner unable to pursue his legal rights during the relevant time."[54] Defendant herein has made no such showing.

Finally, Defendant contends he is entitled to equitable tolling because documents he requested upon meeting the writ writer were seized.[55] Defendant claims this unfairly limited his ability to file his motion, but again he fails to adequately demonstrate how. Defendant's documents were seized in the correctional facility mailroom because the compact disk was believed to contain child pornography.[56] Inspection of mail for child

---

[51] *Id.*
[52] *Id.*
[53] *U.S. v. Edwards*, 2004 WL 2965117 (N.D. TX, Dec. 8, 2004).
[54] *Id.* at *2 (citations omitted).
[55] Rec. Doc. 42-2.
[56] *Id.*

8

pornography sent to someone previously convicted of child pornography is not unreasonable and does not constitute a deliberate action taken to impede the Defendant. This claim is without merit.

### B. Extraordinary Circumstances

Defendant also fails to demonstrate the second element required for the applicable of equitable tolling - extraordinary circumstances. Defendant claims that the same issues discussed above - prison transfer issues, mail/document issues, and his diminished mental capacity - constitute extraordinary circumstances.[57] Applicable jurisprudence forecloses Defendant's claims.

"Transfers, however, are hardly 'rare and exceptional' circumstances that warrant equitable tolling."[58] "Although the Fifth Circuit has not directly addressed the issue, federal courts consistently hold that routine prison transfers are not sufficiently rare or extraordinary to warrant equitable tolling."[59] A different conclusion would "characterize as 'rare and exceptional' those circumstances that countless other prisoners could claim as their own."[60] Thus, "[t]ransfers to other facilities resulting in separation from legal

---

[57] *Id.*
[58] *United States v. Gambini*, No. 99-225, 2002 WL 1767418, at *2 (E.D. La. July 30, 2002); *see also Lucero v. Suthers*, 16 F. App'x 964, 965 (10th Cir. 2001) (unpublished) (noting that prison "transfers have become commonplace"); *Allen v. Johnson*, 602 F. Supp. 2d 724, 727 (E.D. Va. 2009) ("routine prison transfers do not warrant equitable tolling").
[59] *Hogg v. Sparkman*, No. 11-148, 2012 WL 3095578, at *2 (S.D. Miss. July 6, 2012), *report and recommendation adopted*, 2012 WL 3078190 (S.D. Miss. July 30, 2012) (citing *Paulcin v. McDonough*, 259 F. App'x. 211, 213 (11th Cir. 2007) (unpublished) (equitable tolling not warranted because transfer to county jail and denial of access to legal Cir. 2000) (unpublished) (transfers among several correctional facilities and denial of access to legal materials insufficient for equitably tolling § 2255's one year limitations period); *Lindo v. Lefever*, 193 F.Supp.2d 659, 663 (E.D.N.Y. 2002) (transfers between prison facilities, solitary confinement, lockdowns, and restricted access to law library do not qualify as extraordinary circumstances warranting equitable tolling); *Montalvo v. Strack*, No. 99-5082, 2000 WL 718439, at * 2 (S.D. N.Y. June 5, 2000) (transfers between prisons do not merit equitable tolling)).
[60] *Felder*, *supra*, 204 F.3d at 173.

9

papers are not rare and extraordinary and do not warrant equitable tolling."[61] Defendant's purported lack of access to legal materials is likewise not an extraordinary circumstance warranting equitable tolling.[62]

Defendant claims the confiscation of requested materials by the Mailroom and Special Investigative Services constituted governmental interference amounting to an extraordinary circumstance.[63] However, Defendant provides no proof that the documents were seized unjustifiability because they did not contain child pornography, and the record reflects that the documents were not requested until March 2018, which reveals Defendant's own delay.[64] A Defendant cannot claim that extraordinary circumstances exist based on events that delayed filing due to his own negligence in the acquiring of preparatory documents.[65] The same reasoning applies to Defendant's claim regarding the delayed correspondence between himself and his former counsel.

Finally, Defendant has not shown that he suffers from a mental infirmity that constitutes an extraordinary circumstance. Defendant alleges that his "significant learning disability and diminished mental capacity" amounted to extraordinary circumstances based on the following: (1) he completed education only tenth grade and

---

[61] *United States v. Cockerham*, No. 12-714, 2012 WL 12867870, at *2 (W.D. Tex. Aug. 27, 2012) (citing *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004)).
[62] *See Mathison v. United States*, 648 F. Supp. 2d 106, 112 (D.D.C. 2009) ("Neither plaintiff's transfer from one prison to another nor his placement in a housing unit without legal materials is an extraordinary circumstance to warrant tolling of the limitations period.")(citing *United States v. Brittain*, 41 F. App'x 246, 249 (10th Cir. 2002) (finding that a prisoner's "transfers to and from various prisons were not exceptional circumstances and, while inconvenient, did not rise to such a level that they prevented [him] from timely filing" his § 2255 motion, and that his "allegations regarding the inadequacies of the available legal materials for inmates with visual impairments were likewise insufficient"); *United States v. Thierry*, No. 07-20055-001, 2011 WL 2268133, at *3 (W.D. La. June 1, 2011).
[63] *Id.*
[64] *Id.*
[65] *See United States v. Kirkham*, 367 F. App'x. 539, 541 (5th Cir. 2010) (per curiam); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (collecting cases).

was in Special Education throughout his elementary education; and (2) he suffered mental damage because of his synthetic marijuana use.[66]

First, Defendant's education level is not an extraordinary circumstance; the Fifth Circuit has found an education level much lower – third grade level - not to qualify as such where there is no demonstration how a defendant's education level affected his ability to pursue his rights.[67] Second, Defendant fails to demonstrate the same regarding a purported mental defect based on his drug addiction. Defendant has failed to carry his burden of demonstrating that he is entitled to equitable tolling, and his motion is untimely.

## III. CONCLUSION

For the reasons set forth above, the Defendant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence*[68] is DENIED as untimely.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 13th day of July, 2021.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[66] *Id.*
[67] *See U.S. v. Edwards*, 2004 WL 2965117 (N.D. Tx. 2004).
[68] Rec. Doc. No. 42-2.